Good afternoon. My name is Bruce Weirock, representing Matthew Pancratz. Basically, this case would never have wound up in the court system whatsoever if the Restricted Access Management Division had simply looked at the documents that were submitted, seen that they didn't comply with what the agency requires people submit when they do an agency transfer, called up the fishermen and said, where is this document? Or if your client hasn't signed a notarized agreement. Well, it wouldn't have wound up there either, right? Well, there was no notarized sales agreement. That's one of the points. There was no notarized sales agreement. The form, the very first extra alert at page one, says in the instruction, copy of or signed and notarized sales or gift agreement. So if Mr. Pancratz and the record had shown a notarized sales agreement that had a notarized sales agreement between Mr. Sherebarren and Mr. Pancratz, the agency simply could say, well, you know, if you send us this notarized sales agreement, we'll approve this transfer. And then the fisherman or the broker would say, handling the transfer, says, okay, well, here's the notarized sales agreement. No problem, no harm, no foul, transfer occurs. Or in this case, we have a broker that stole money and ended up in jail for stealing it. We're not looking to go back against the broker. We're saying if the agency had said, well, broker, you don't have a notarized sales agreement, which we require, just send that in. Then the broker contacts the fisherman and said, yeah, you know, we just have to do this one last little item. We'll send in a notarized sales agreement, we're fine. Then Mr. Pancratz would have seen what happened, and then she had cut and pasted and done all kinds of things, changing the documents that were submitted to carry out her scheme to get money from Nigeria. And that, too, could have stopped this. So I think, really, it goes back to a very simple thing. The agency has these forms, and they require people to submit information. If they don't submit the information, and it says the information is required, because faxed applications aren't acceptable, please submit original incomplete applications will not be processed, then this one would have stopped its tracks. But the point of it, and this is a strange case, because the point of any of these rules has nothing to do with this, right? The reason why they want all this information is not to prevent against fraudulent brokers. And so the administrators essentially use the information for their own purposes, but they're not poking around trying to find out if they're a fraudulent broker. No, but I think it's interesting. So if it would have prevented it, it would have prevented it almost fortuitously. That's correct. And, in fact, fraudulent brokers has never been an issue. This one is the first one we could find out about, although there's another evidence of brokers who do things right, and maybe some of the other brokers who do things wrong. But this is the only legal case that we've all seen of a fraudulent broker. This has to be distinguished a lot between cases where there's agencies like PERG that allow agencies to waive their requirements unless there's substantial harm shown. In this situation, we're dealing with unsophisticated commercial fishermen that are out fishing, and they rely on people to do things for them. The agency spent many, many years developing the Halibut Transfer Program, and part of the situation here is when you have a heavily regulated commercial fishery or fishing program with fishermen and bureaucracy and bureaucrats and valuable shares and historically protected industry like the fishing industry, you're going to require more crossing of I's and dotting of T's and dotting of I's than you would in other situations. Your client did sign a notarized AFT. Mr. Pankratz did have a notarized transfer agreement application. That's on file. But what the agency requires is a notarized sales agreement. That's not required by any regulation. There's a statement on the document itself that says you're not supposed to. The regulation itself doesn't specifically say spell out these points. That's correct. And the regulation is cited on page 42 of the brief. But they do talk about the transfer agreement to the application and provide an application transfer form to any person on request. So the specifics of the application form are provided in the application. The agency has then gone forward and fleshed this out because of what Mr. Hogarth and the National Fishery Service, North Pacific Management Council, and all these other entities have said we have to do this in order to help these fishermen along. This isn't done for mere superfluous reasons to collect data, although collection of data is important here because they want to know what the shares are called. But isn't the issue that the instructions themselves have the force of law such that we must conclude that the administrative agency committed an arbitrary and capricious exercise of its discretion in determining adversely the claim? And I think that's what the district court relied on, too, that sort of philosophy in citing really the only case it did cite, the steamboaters case. Well, philosophy or legal principle, because if it has the force of law, you win. If it doesn't, you lose. Well, in this situation under the Administrative Procedures Act, when it applies to all the public and it gives it to all the public, the public is supposed to comply, the fishermen are supposed to comply, essentially that's an administrative requirement that is imposed on the public. And we could not sign it. So even though it hasn't been promulgated pursuant to the Administrative Procedure Act, duly noticed and comments solicited, we should treat it as if it is a regulation in the Code of Federal Regulations? The form itself has not been set forth in the Code of Federal Regulations. The transfer application process, the words related to that have. There's nothing in the Code of Federal Regulations that says that the application has to be notarized. The notice will be reduced and it does not say that either. It does require this kind of a document, though. It does. The agency itself requires a notarized sales. I ask you a question. You mentioned a lot of words, but you didn't answer my question. The regulations do not require a notarized sales. No, no. That's my question. So you don't have a regulation that requires it. Why isn't that going to be the case? Because what happens here is in this situation, the agency has held itself out to all fishermen and has required these things in order to protect the fishermen. It has required a copy of a notarized sales agreement. That's nice, but so what? I mean, you've heard of federal crop insurance, right? It was decided before any of us went to law school. That's the guy who called up and said, hey, can I am I insured if I if I plant winter wheat? And I said, oh, yes. Don't worry about it. Yeah, I will insure winter wheat for you. And that was the plan. And then they say, you know what counts? This was in the regulation. Anything else that the agency communicates, agents communicate isn't binding. The only thing that's binding is what is in the regulation. That's what the Supreme Court said in 1943. And the four corners of what is you have to turn square corners with the governor. Government, I think, was the other thing. And within the square corners is what the government requires. There's also a line of cases that says that government agencies are supposed to consistently follow their internal procedures. And if they don't, you may have a cause of action. But here they didn't do this consistently. Isn't that right? But this is not internal procedures. This is external procedures. It deals with the public and fishermen when they transfer. That's what they require. This is not, oh, my staff do this and do that. Ultimately, isn't the government's position about this that this also would have made a big difference because the signature page, which was a separate page, and she just made the same changes, could have had a notarized signature page and everything else would have happened the same way. It has to do with the fortuity of this all, actually. It works. If you can't figure out one way to interprod these, let's help her sister find another way she's going to interprod it. At least giving notice to the fishermen that we don't have this, to the broker, that we need a notarized sales agreement, but at least to stop the process that went through quite quickly through Goose, through this agency, to approve this transfer. Ordinarily, somebody wants to have a transfer and doesn't want the agency to apply nitpicky procedural rules to get in their way. People are always complaining about agencies that make them do stupid things that aren't going to do them any good. Well, that's... Why wouldn't he have gotten this notarized? He got the AFT notarized. If the requirement was that he get the sales agreement notarized, is there a reason to believe he said, okay, now they require both things, he would have gotten... I mean, he did go down and notarize documents with this woman. He didn't notarize the sales agreement. Because it wasn't required. It was required. It says it's required. Please submit the originals. Your application, incomplete applications, will not be processed. That's a sign... Is there any reason to believe that if he thought the thing was required, he would not have gone down and notarized at the same time he had notarized AFT? If he had done that, that would be a different case. In this case, he wasn't even given the opportunity, wasn't even notified, didn't even have a chance to glance at all these fraudulent documents given to the agency because they approved it without him giving them any idea that they had something that was cut, pasted, and faxed, and put together illegally.  Good afternoon, Your Honors. May it please the Court, this is Jennifer Scheller for the Federal Agencies. With me at counsel's table is Robert Babson from NOAA Fisheries. I'd like to begin by addressing a point that Judge Berzon drew out, and it was sort of a theme throughout Mr. Weirach's brief, that this Act is supposed to be designed to protect fishermen. And that's certainly true in the sense that it's designed to protect the fishery and ensure that there's a resource there in the future for fishermen to harvest. When you're talking about protections for individual fishermen, the place to look is to the regulations. And in this case, the protections that are spelled out are designed to protect the historical nature of the fishery, to keep the quota shares in the hands of small fishermen and out of the hands of big industrial investors. And those are requirements that are spelled out in the regulations. For instance, that there's a cap on the maximum number of quota shares that can be held, that leasing is prohibited, that sort of thing. But there are requirements for notarized documents and for certain documents to be submitted, and presumably part of that reason is to, I assume the agency would not be happy if they were transferring shares and people did not intend to have transfer because somebody was unfortunately submitting them. That's correct, and that's the reason why the application for transfer form is required to be signed by the applicant or his authorized agent and for that application to be notarized. That's spelled out in the regulations, and that was complied with in this case. There is, as the hearing officer found, a notarized application. So then you also say on the form that you have to have the agreement authorized, I mean, notarized. And I would guess that if the agency knows something funny, they would send it back and say, we're not going to transfer this because the agreement hasn't been notarized. Well, you certainly would retain the authority to do that. So essentially you're retaining the authority to do it when you want to do it and not when you don't want to do it. I would say a couple things about that. First of all, the agency wouldn't just deny the request and send it back. If they thought that something wasn't quite right about the agreement, that it looked like maybe the fisherman hadn't signed it or something along those lines, they would contact the broker and or the fisherman and try to resolve that issue. But there is a line of cases that specifically say that this court will not review an agency's compliance with statements that aren't binding on the agency, and that's exactly what we have in this case. As I say, there is also a line of cases that say that if the agency says we're going to do things this way, they have an obligation to do it that way and not in some other fashion. I don't know how the two lines of cases reconcile, but I know they're out there. The second line is not discussed in the briefs, but it exists. So why is it this is falling on one side rather than the other of those? Well, Your Honor, I'm not going to try to reconcile both lines of cases. But in this particular case, the testimony in the record is that RAND never required the failed agreement to be notarized or they never required original signatures on the agreement. But why would they put something in a form that they don't know? That's a good question, Your Honor, and I don't know the answer to that. But the end result is that whenever... It's a good question for the person that's running around trying to badly find a notary when you don't really need one. And as the hearing officer explained, those instructions on the form are advisory to the applicant. And here, Mr. Pankratz, he had the form, but as the court pointed out, he didn't go out and get it notarized. Would the person really have made it if he had gone out and gotten it notarized? I guess I'm sort of baffled by that. Let's say the agency had said, no, you've got to go out and get it notarized. Is there any reason to believe he wouldn't just go out and get it notarized? He got it already notarized. I think that's exactly right, Your Honor. And that's what the hearing officer found and provided as one of the rationales for his decision was that even if the sales agreement had been notarized, there's no guarantee that it would have stopped the broker's fraud in this case. See, but Pankratz, at that point, was on the same side, and he was cooperating. He was perfectly happy to do what was necessary to get this deal done. That's right. He wanted to transfer these shares. Anything further? No, Your Honor, unless there are any questions from the court. Okay. It's just an argument to answer a minute. Did you have a minute you wanted to take? No. Okay. 20 seconds. All right. The reason to get it notarized is because the key record also shows this was an obviously cut-and-pasted fax signature of Mr. Sheridan, so it's not simply a signed document. These were fraudulent, cut-and-pasted. That's clear in the record. Thank you. Okay. Thank you. I'm sorry. It was to answer a minute. All right.
judges: Kozinski, Berzon, Tallman